## JONES, Respondent, v. SPRINGFIELD TRACTION COMPANY, Appellant.

### St. Louis Court of Appeals, April 20, 1909.

1. **DISCRETION OF TRIAL COURT: Juries: Prejudice of Officer: Appellate Practice.** It is within the discretion of the trial court to discharge the entire jury after it has been impaneled when it appears that the officer who summoned the jury is prejudiced in favor of one of the parties to the suit; and in such case the appellate court will not review the ruling unless it appears that the discretion of the trial court was abused.

2. **PRACTICE: Motion to Strike Out: Answering Over: Waiver.** Where a defendant, after his motion to strike out plaintiff's amended petition, on the ground that it changes the cause of action, has been overruled, joins issue and proceeds to trial, such defendant waives the objection contained in the motion to strike out.

3. ———: **Petition: After Verdict.** After answer and verdict, a petition will be construed by allowing all reasonable intendments and inferences of fact in aid of the verdict.

4. **CARRIERS OF PASSENGERS: Usual Stopping Place: Duty of Employees.** Where a street car stops at a point other than the usual stopping place, the servants of the company are not presumed to be on the lookout for passengers alighting at such place.

5. ———: ———: ———: ———. But when the car stops at the usual stopping place, or at any place at the request of a passenger, the law devolves upon the employees in charge of the car the duty of holding the car a reasonable length of time for passengers to alight.

6. **EVIDENCE: Expert Testimony: History of Injury.** In an action for personal injuries, a physician testified in regard to plaintiff's injuries, and in his testimony related some of the history of the case as he had learned it from plaintiff, and in another part of his testimony gave his opinion as an expert as to whether such injuries might have been caused by the accident on which plaintiff based her suit; such expert opinion was competent where it did not appear that the opinion was based on the history of the injury as told him by plaintiff.

7. **INSTRUCTIONS: Credibility of Witnesses: Harmless Error.** Defendant requested an instruction to the effect that the jury should not give greater weight to the plaintiff's witnesses because she was a girl and defendant a corporation, which instruction the court modified by inserting the word "merely" so as to instruct the jury that they should not give greater weight to plaintiff's witnesses "*merely* because she was a girl and defendant a corporation"; *held*, that the error, if any, was too minute to materially affect the merits of the controversy.

8. **APPELLATE PRACTICE: Conflicting Evidence: Verdict.** Where the evidence is conflicting and both sides of the controversy have been submitted to the jury on proper instructions, the appellate court will not disturb the verdict.

Appeal from Webster Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*Delaney & Delaney* for appellant.

The action of the Greene Circuit Court in quashing the panel of jurors after issue joined and jury sworn was in legal effect a nonsuit and the court erred in continuing the cause. The court upon review should have dismissed said action. The alleged affidavit upon which said action was predicated is in law no affidavit. It does not allege a single fact, hence refuge cannot be taken behind the claim that it was the exercise of a discretion which cannot be reviewed. State v. Craft, 164 Mo. 631; State v. Grennan, 164 Mo. 487. Even if the alleged affidavit be held to have presented a matter requiring the exercise of a sound discretion, the discretion was abused and appellate courts will afford relief where discretion is exercised arbitrarily. Spigener v. State, 62 Ala. 383; State v. Pritchard, 15 Nev. 74; R. S. 1879, sec. 1989; Matter of Bennett, 51 Mich. 71; People v. Carrier, 46 Mich. 442; Vogta v. Pelikan, 15 Mo. App. 471. When the selection, which was attempted, did not result in a panel to plaintiff's wishes, she was per-

mitted to reconsider and reject. Vojta v. Pelikan, 15 Mo. App. 471; Spigener v. State, 62 Ala. 383; Matter of Bennett, 51 Mich. 71; People v. Carrier, 46 Mich. 442; State v. Pritchard, 15 Nev. 74. From the nature of the case we believe the defendant was entitled to a cautionary instruction admonishing the jury to be on guard. Johnson v. St. L. Sub. Co., 173 Mo. 307. By inserting the word "merely" in the instruction, the very purpose defendant had in view in asking said instruction was defeated. And the court emphasized by the strongest of implications that in cases of this character the evidence is weighed differently than in ordinary cases between individuals. State v. Austin, 113 Mo. 538; State v. Hobbs, 117 Mo. 620; State v. Cook, 84 Mo. 40.

*O. T. Hamlin* for respondent.

It was in the sound discretion of the trial court to dismiss the panel and continue the cause, and this court will not disturb it unless discretion was abused to the prejudice of appellant. Vojta v. Pelikan, 15 Mo. App. 478; Liese v. Myer, 143 Mo. 547. If the amended petition was a departure from the first, appellant waived right to raise question of departure by pleading over and trying cause on issues thus joined. Scoville v. Glasner, 79 Mo. 449; Liese v. Myer, 143 Mo. 547; Bernard v. Mott, 89 Mo. 402.

NORTONI, J.—The plaintiff is a minor. She sues by her next friend, duly appointed and qualified. The action is for damages alleged to have accrued to the plaintiff through personal injuries received while in the act of alighting from defendant's street car. Plaintiff recovered and the defendant appeals. The case originated in the circuit court of Greene county. It was afterwards transferred by change of venue to the circuit court of Webster county, where the trial was had.

The first complaint on appeal relates to the action of the court in discharging the jury after it was empaneled to try the cause. The case coming on for trial, a jury was assembled and duly examined upon the *voir dire;* the respective parties made their challenges, and it was sworn to try the cause. The hour for the noon recess having arrived, the court thereupon took a recess until two o'clock. Immediately upon the reconvening of court in the afternoon, the plaintiff filed a motion to discharge the jury theretofore empaneled for the reason the deputy sheriff who'selected the entire panel was biased and prejudiced against the plaintiff and was, moreover, under the influence of the defendant. This motion the court sustained and discharged the jury. There is no doubt that a challenge to the entire panel will lie for bias or partiality on the part of the officer who summoned the jury: [17 Amer. and Eng. Ency. Law (2 Ed.), 1112.] The grounds therefor, upon which the court proceeded in discharging the panel were entirely proper, and unless it appears the court abused its discretion in the matter, its action should be sustained. It is the rule that appellate courts will not review the rulings of the trial court in matters of discretion unless prejudice appears. [Vojta v. Pelikan, 15 Mo. App. 471, 478.] There is naught in the record indicating prejudice to the defendant. On questions of this nature, there are matters and things which frequently appeal to and properly influence the judgment of the trial court in the exercise of a sound discretion that may not appear in the record on appeal. On a charge so serious as that involved in the present instance, an appellate court should hesitate indeed before entering upon a review of a discretionary matter. From aught that appears, it may have been obvious to the court that the jury was unduly friendly to the defendant. The assignment will be overruled.

There are several amended petitions filed in the cause. The defendant moved to strike out the last

amended petition for the reason it changed the cause of action declared upon in the original petition. This motion was overruled and defendant excepted thereto. It is now urged that the court erred in not striking out the last amended petition. It will be unnecessary to examine minutely the question whether or not the last amended petition stated a cause of action other than and different from that declared upon in the original. It appears in the original, and all of the amended petitions thereafter, that plaintiff alleged she was injured while alighting as a passenger from defendant's street car. The negligent act relied upon is that the car was started forward by a sudden jerk while she was in the act of alighting, thus precipitating her to the street and causing her injury. After defendant's motion to strike out the last amended petition was overruled, it filed its answer thereto and proceeded with the trial. This action on its part operated to waive its right to have the ruling of the court on the motion to strike out, reviewed. And this is true notwithstanding the fact that it had properly saved its exceptions to the ruling of the court on the motion. Were the defendant sincere in its motion to strike out the last amended petition, it should have stood thereon and not participated in the trial on the amended pleading. Having chosen to join issues thereon, it ought now to be precluded from making the trial court a place of chance and seek to have the trial on the merits, to which it had voluntarily joined issues, set aside for error committed, if at all, in the ruling on the motion. [Scoville v. Glasner, 79 Mo. 449; Liese v. Meyer, 143 Mo. 547.]

It is next argued that the judgment should be reversed for the reason the petition fails to state a cause of action. Having answered to the petition and participated in the trial, the question for decision relates to the sufficiency of the petition after verdict. The petition alleges, substantially, that the plaintiff became a passenger upon defendant's street car at Doling Park,

destined to a point on Commercial street, near the intersection of Grant and Commercial streets, and paid her fare to the conductor for the transportation; that when the car was within a reasonable distance of the point mentioned, plaintiff notified the conductor of her desire to alight at the intersection of said streets. It is averred that before the car reached there and while it was still west of the point mentioned about one hundred feet, in obedience to her request, it stopped for the purpose of allowing the plaintiff to alight therefrom, and while she was, with due care, in the act of alighting, after the car had come to a full stop at the point aforesaid, the employees of the defendant negligently caused the same to start with a sudden jerk, thereby causing her to fall violently to the ground, in consequence of which she was seriously injured, etc. It is urged that the petition is fatally defective in that it omits to formally aver that the defendant's servants knew the plaintiff was in the act of alighting at the time she was injured. Now it appears from the allegations that the plaintiff, when within a reasonable distance therefrom, requested the conductor to stop at the point mentioned, and that the car stopped thereat for the purpose of allowing her to alight therefrom. These averments, besides expressly stating that the car was stopped for the purpose of allowing the plaintiff to alight, essentially imply that it was stopped in obedience to her request. When dealing, then, with the reasonable inferences and implications arising from the facts averred, it is obvious the defendant's servants on the car either knew, or by the exercise of care, might have known that plaintiff was in the act of alighting at the time the car was started forward. This is clear for the reason the car was stopped at her request for the purpose of allowing her to alight therefrom. After answer and verdict, the petition is to be construed by allowing all reasonable intendments and inferences of fact in aid of the verdict. When these are allowed, the petition is certainly

sufficient, for though it fails to allege that the car did not stop a reasonable time to allow the plaintiff to alight, or that the servants of the defendant knew, or should have known, that she was in the act of alighting, these facts are clearly implied from those averred. If the car was stopped by the employees for plaintiff to alight and she proceeded immediately to do so, as alleged, it is a reasonable inference that those operating the car knew the fact. [McKinstry v. St. Louis Transit Co., 108 Mo. App. 12.] However, we do not understand that it is relevant to the defendant's liability that its servants should either have known, or, by the exercise of ordinary care might have known, that the plaintiff was in the act of alighting from the car under the circumstances of this case; that is, if the car, after having been stopped for the purpose, was not held a reasonable length of time for plaintiff to alight. Of course if a car is stopped at a place other than the usual stopping place, or if it remains stationary for more than a reasonable length of time for a person to alight, then it might be essential for the plaintiff to show that those in charge of the car knew that he or she was in the act of alighting before liability could attach, for those in charge of the car are not presumed to be on the lookout for passengers alighting without their knowledge at a point other than the usual stopping places, nor are they presumed to be in the exercise of a high degree of care for the safety of a passenger after a reasonable length of time for alighting has transpired at a regular stopping place, unless they know that the passenger is preparing to alight. Be this as it may, when the car is stopped at a usual place for passengers to alight, this operates as an invitation to those on board to alight therefrom if they desire to do so, and the law imposes the duty upon the carrier to hold the car a reasonable length of time for passengers to alight. The same duty obtains with respect to holding a car a reasonable length of time for passengers to alight at any place along the

line if the defendant's agents in charge stop the car in
response to a request for the purpose of permitting a
passenger to alight therefrom.   Having stopped the car
for that purpose, the law devolves the duty that it shall
so remain a reasonable time to the end that the passen-
gers may alight in safety, by exercising ordinary care
on their part.   [Cullar v. M. K. & T. Ry. Co., 84 Mo.
App. 340; Cramer v. Springfield Traction Co., 112 Mo.
App. 350.]

It appears in the fall which plaintiff received, the
side of her head, or rather her temple, came in contact
with the pavement.   From this she was rendered uncon-
scious and so remained for a considerable time.   Among
other things, the evidence tends to prove her sight was
afterwards impaired as a result of this injury.   She was
treated by Dr. Coffelt, an eye specialist.   His testimony
tended to prove that several months after her injury
she was suffering from hyperopia, or far-sightedness.
The doctor testified this defect of vision would be per-
manent.   There was also testimony in the case tending
to prove that the plaintiff suffered slightly since her in-
jury from a paralytic condition.   Dr. Coffelt, in his
evidence, related some facts pertaining to the history
of the case which he received from the plaintiff during
the period he treated her.   He also gave his opinion
as an expert which tended to prove disabilities from
the plaintiff's standpoint.   It is now urged that this
opinion was based largely upon the history of the case
which he had received from the plaintiff and was there-
fore incompetent within the ruling of Holloway v. Kan-
sas City, 184 Mo. 19.   Upon a careful consideration
of this testimony, we are persuaded that the examination
did not infringe upon the doctrine of that case.   There
is no word to be found in the hypothetical questions
propounded to the doctor touching the history of the
case.   In other words, they seem to be based entirely
upon facts theretofore developed in the proof.   A fair
example of the hypothesis submitted, is the following

question: "Q. Now I will ask you, in your opinion as a physician, if a person were thrown from a street car to the hard pavement and should strike on the side of the head, near the temple, with sufficient force to render them unconscious for a time, would that affect the nervous system and bring about these troubles mentioned?" To which, over the objection of the defendant, witness answered: "It is possible." While it is true in other portions of his testimony the doctor related some of the history of the case as revealed to him by his patient during treatment, nothing appears to the effect that his expert opinion, communicated to the jury, was based thereon. The evidence as given, was entirely competent. [Holloway v. Kansas City, 184 Mo. 19.]

The defendant requested the court to instruct the jury that in this case the jury should weigh the evidence by the same rules it would weigh it if the contest were between two individuals, and should not give greater weight to the testimony of the witnesses for plaintiff because she is a girl and the defendant is a corporation. The court modified this request by inserting the word "merely" between the words "plaintiff" and "because." As thus modified, the jury were told that they should weigh the evidence by the same rules it should be weighed if the case were a contest between individuals and that greater weight should not be given to the testimony of the witnesses for the plaintiff "merely because she is a girl and the defendant is a corporation." It is said the court erred by inserting the word "merely" in this instruction for the reason it implies that otherwise it was proper to give greater weight to the testimony of the plaintiff's witnesses than to those of the defendant. This criticism is indeed minute and the reasoning thereon is much attenuated. In view of our statute commanding that a judgment should be affirmed in all cases unless it appears error was committed materially affecting the merits of the controversy, the court is

certainly precluded from overturning the judgment on this score.

The testimony of several witnesses on the part of plaintiff tended to prove that she was a girl about fourteen years of age. At the time, plaintiff was employed as a nursegirl and had in keeping an infant child of her employer. The street car on which she was a passenger was what is known as a summer car, open at the sides, with seats lengthwise across the same. A footboard extends along the full length on either side of the car, and passengers pass out by stepping upon this footboard through the side of the car to the street. Several witnesses testified on behalf of the plaintiff to the effect that she notified the conductor when nearing the intersection of Grant and Commercial streets, of her desire to alight therefrom. In response to her request, the conductor notified the motorman. It was after dark. As the car slowed down for the stop, the plaintiff took up the baby and slid across the seat to the side of the car. When the car came to a stop, plaintiff, with the baby in her arms, stepped upon the footboard in the act of alighting, when it was suddenly started forward by the act of the motorman in turning on the electric current. This sudden start precipitated her to the pavement, which resulted in her injuries. The same witnesses testified that the point in question was a regular place for the car to stop to receive and deposit passengers. On these facts, the court instructed on the theory of the plaintiff, that if the jury believed from the evidence that plaintiff was a passenger on the car and that defendant's agents or servants knew that fact, then the defendant owed to plaintiff the highest degree of care, and if the jury found that in response to plaintiff's request, the defendant's servants stopped the car for the purpose of letting her alight therefrom, then it was defendant's duty to hold the car a reasonable length of time to permit her to alight. And if they

137 App.—27

found that immediately upon stopping the car, plaintiff started to alight, and while in the act of so doing, she acted with reasonable care and diligence, and the agents or servants of the defendant suddenly caused the car to jerk or start, thereby throwing her violently to the ground, inflicting injury, the verdict should be in favor of the plaintiff.   This instruction is criticized for the reason it fails to submit to the jury the question as to whether or not the car was stopped a reasonable time for the plaintiff to alight, and it is said, it entirely ignores the question of knowledge on the part of the defendant that the plaintiff was alighting therefrom. Now as to the question of knowledge on the part of the defendant's servants, we believe this criticism is unfounded, for although the instruction does not submit that question in precise terms, that is, that the defendant's servants knew the plaintiff was then and there in the act of alighting, or by reasonable care, might have known such fact, etc., it does require the jury to find that those in charge of the car knew she was a passenger thereon, that they knew she had requested a stop for her to alight, and that in response to that request, they stopped the car for that purpose.   Now there can be no question as to the law whether it was a regular stopping place or otherwise.   If defendant's servants knew the plaintiff was a passenger and that she desired to alight at the point mentioned, and they stopped the car for the purpose of permitting her to alight, the law enjoins upon the defendant the obligation to hold the car for a reasonable length of time that she might alight in safety.   That under these circumstances it was the defendant's duty to hold the car a reasonable length of time for the plaintiff to alight, the instruction told the jury in plain terms.   As to whether plaintiff did proceed to alight within a reasonable time, the instruction required the jury to find that immediately upon stopping the car, plaintiff started to alight and that she proceeded with diligence and care

in that behalf. Certainly she was not required to move forward to that end until the car had stopped, and if she immediately started to alight upon the stopping of the car, and proceeded with diligence and care to that end, then she proceeded to alight within a reasonable time, and if the car was started, causing her injury, while thus alighting, the obligation of defendant to hold it for a reasonable time was thereby breached. The instruction is not open to the criticism levelled against it. [See Cobb v. Lindell Ry. Co., 149 Mo. 135.]

The testimony on the part of defendant tended to prove that the plaintiff slid across the seat, took her position upon the footboard of the car, with the baby in her arms, and stepped off the car while it was still in motion. In several instructions the court submitted these facts to the jury with the direction that if it found plaintiff so conducted herself, she was guilty of such contributory negligence as precluded her right to recover, and the verdict should be for the defendant. The jury found the issues for the plaintiff, however; that is, the jury found the car did stop for her to alight, as was detailed by herself and several witnesses; that she immediately undertook to alight therefrom, and while exercising due diligence and care in that behalf, the car was started forward by the motorman turning on the electric current, which precipitated her to the street and inflicted the injuries complained of. There is substantial evidence to support this finding, and with it, we are therefore not concerned.

We have examined all of the questions presented by appellant in the brief and find them to be without merit. All of the issues in the case were submitted to the jury by the instructions given. The trial seems to have been fair and impartial. It is unnecessary to prolong the opinion with a discussion of questions which we regard unimportant.

The judgment will be affirmed. It is so ordered. *Goode, J.,* and *Reynolds, P. J.,* concur.